UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN WHITE,

        Petitioner,               Case No. 2:16-cv-12910
                                   Hon. George Caram Steeh

     v.

JEFFREY WOODS,

        Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF
HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY,
AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

      This is a habeas case filed by a Michigan prisoner under 28 U.S.C. §

2254. Petitioner Brian White was convicted after a jury trial in the Wayne

Circuit Court of two counts of first-degree murder, MICH. COMP. LAWS §

750.316(1)(a), three counts of assault with intent to commit murder, MICH.

COMP. LAWS § 750.83, felon in possession of a firearm, MICH. COMP. LAWS §

750.224f, and possession of a firearm during the commission of a felony,

MICH. COMP. LAWS § 750.227b. Petitioner was sentenced to a controlling

term of life imprisonment without possibility of parole for the murder

convictions and lesser terms for the other offenses.

      The petition raises five claims: (1) Petitioner's double jeopardy rights

were violated when the misconduct of the prosecutor caused his first trial to

end in a mistrial, (2) Petitioner's counsel was ineffective for failing to present an audio recording of a prosecution witness's recanting statement, (3) Petitioner's counsel was ineffective for failing to more thoroughly cross examine prosecution witness Jessica Cooper, (4) the prosecutor committed misconduct by arguing facts not in evidence, and (5) Petitioner's counsel was ineffective for failing to call an expert witness on identification testimony and failing to explore other defenses prior to his second trial.

The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will also deny a certificate of appealability, and deny permission to proceed on appeal in forma pauperis.

## I. Background

Petitioner and his co-defendant, Jonathan May, were tried twice in relation to the shooting of five persons resulting the death of two of the victims. In September 2013, the defendants' first joint trial ended in a mistrial. In January 2014, Petitioner was retried separately and convicted of the charged offenses.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

Defendant's convictions arise from the February 2012 shooting deaths of Ernest Bryant and Brinda Long, and the nonfatal shooting assaults of Eric Bowler, Quintus Parham, and Donte Laird. All five victims had been riding around in a van and had stopped at Parham's house. Just after Parham got out of the van, three men approached the vehicle and began firing shots. The prosecution relied principally on the identification testimony of Eric Bowler to link defendants to the crime. Bowler, who knew both defendants from the neighborhood, gave a statement to the police identifying defendants as the shooters shortly after the shooting. In March 2013, however, Bowler gave a statement to a defense investigator in which he denied knowing the shooters. Shortly after giving that statement, Bowler notified the police, and later similarly testified at trial, that he was forced at gunpoint to go to defendant May's attorney's office and was coerced into giving a false statement denying that he knew the shooters. Bowler reaffirmed to the police, and at trial, that defendants May and White were the shooters. The defense theory at trial was that the identification testimony was not credible.

*    *    *

The prosecution's theory at trial was that there was a history of problems between defendant White and victim Parham, including a prior incident in August 2011 when Parham shot up a van occupied by White's then girlfriend, Pamela Cooper. Less than a week before the instant offenses were committed, Parham pleaded no contest to assault charges in Cooper's case pursuant to a plea agreement that included a sentence of 3 to 10 years.

*People v. White*, No. 320696, 2015 WL 6161448, *1, 5 (Mich. Ct. App. Oct. 20, 2015).

Following his conviction and sentence Petitioner filed a claim of appeal in the Michigan Court of Appeals. His brief on appeal filed by

appellate counsel raised what now form Petitioner's first and second

habeas claims. Petitioner also filed a supplemental pro se brief that raised

what now form his remaining claims.

The Michigan Court of Appeals affirmed Petitioner's convictions in an

unpublished opinion. *Id*. Petitioner subsequently filed an application for

leave to appeal in the Michigan Supreme Court, raising the same five

claims he presented to the Michigan Court of Appeals. The Michigan

Supreme Court denied the application because it was "not persuaded that

the questions presented should be reviewed." *People v. White*, 877 N.W.2d

887 (Mich. May 2, 2016) (Table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

A state court adjudication is "contrary to" Supreme Court precedent

under § 2254(d)(1) "if the state court applies a rule that contradicts the

governing law set forth in [Supreme Court] cases" or "if the state court

confronts a set of facts that are materially indistinguishable from a decision

[of the Supreme Court] and nevertheless arrives at a [different result]."

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks

omitted).

Under the "unreasonable application" clause of § 2254(d)(1),

even clear error will not suffice. Rather, as a condition for
obtaining habeas corpus from a federal court, a state prisoner
must show that the state court's ruling on the claim being
presented in federal court was so lacking in justification that
there was an error well understood and comprehended in
existing law beyond any possibility for fairminded
disagreement.

*White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698

(2014) (citations, quotation marks, and alterations omitted).

"When reviewing state criminal convictions on collateral review,

federal judges are required to afford state courts due respect by

overturning their decisions only when there could be no reasonable dispute

that they were wrong." *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013)(internal quotation marks omitted).

### III. Analysis

### A. Double Jeopardy

Petitioner's first claim asserts that his second trial was barred by the Double Jeopardy Clause of the Fifth Amendment because the misconduct of the prosecutor caused his first trial to end in a mistrial.

The Double Jeopardy Clause, which is "applicable to the States through the Fourteenth Amendment," *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988), states that "[n]o person shall be . . . subject for the same offence to

be twice put in jeopardy of life or limb." U.S. Const. Amend. V. The Amendment, however, does not preclude a court from "retrying a defendant whose conviction is set aside because of an error in the proceedings leading to conviction." *United States v. Tateo*, 377 U.S. 463, 465 (1964). An exception to the rule permitting a retrial applies where governmental action is intended to provoke a mistrial request and thereby subject the defendant to the burden imposed by multiple prosecutions. *United States v. Dinitz*, 424 U.S. 600, 611 (1976). In other words, "the circumstances under which . . . a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 679 (1982).

The Michigan Court of Appeals described the circumstances which resulted in the mistrial as follows:

> In September 2013, a joint trial before a single jury began. At that time, defendant May was represented by attorney David Cripps. During opening statement, the prosecutor recounted how Bowler implicated both defendants in the shooting when he spoke to the police two days after the crime and when he testified at the preliminary examinations. The prosecutor then added:

> After he testifies at the preliminary exams, Eric
> Bowler is abducted, taken off the streets, whatever,
> at gunpoint by two men he does not know. Taken
> down to the Defendant's, Jonathan May's attorney's
> office, Mr. Cripps, where he's forced to give a
> statement saying nothing happened basically or
> changing his statement.
>
> After he does that, he contacts Sergeant Ford, lets
> Sergeant Ford know what's going on, and that he
> had been taken off the streets and forced to make a
> different statement.

> After all parties gave their opening statements, defendant White
> moved for a mistrial on the ground that the prosecutor's
> comments about Bowler being kidnapped and taken to attorney
> Cripps's office placed Cripps in a position of having to respond
> to those claims, but he could not appear as a witness at
> defendant May's trial. Defendant May joined in the mistrial
> motion. The trial court ruled that defendant May's ability to
> receive a fair trial was jeopardized by the prosecutor's opening
> statement, which established a likelihood that it would be
> necessary to call Cripps, his attorney, as a witness.
> Accordingly, with the concurrence of both defendants, the court
> granted the motion for a mistrial.

*White*, 2015 WL 6161448, *1.

After reciting the applicable constitutional standard, and correctly

noting that  a retrial is barred by the Double Jeopardy Clause only upon

showing that the prosecutor deliberately induced the motion for a mistrial,

the Michigan Court of Appeals rejected the on the merits:

> Both defendants expressly stated on the record that they
> concurred in the request for a mistrial based on manifest
> necessity. The record does not support their contention that the

prosecutor engaged in intentional conduct designed to goad them into moving for a mistrial. The prosecutor opposed the motion for a mistrial. Neither defendant challenged the prosecutor's entitlement to introduce evidence surrounding the circumstances of Bowler's statement to the defense investigator. Indeed, that evidence was admitted at defendants' second trial and neither defendant challenged its admissibility. At most, it appears that the prosecutor was negligent for failing to raise the issue before trial in order to resolve whether attorney Cripps would need to be called as a witness to refute the prosecution's evidence, and whether that situation would require that he be removed as defendant May's counsel. The fact that the prosecutor was not intending to goad defendants into moving for a mistrial is supported not only by the prosecutor's opposition to the motion, but also by the fact that it was the trial court, not the defense attorneys, who apparently first indicated that there might be a problem with the proposed testimony from Bowler if attorney Cripps continued to represent defendant May. On this record, there is no basis for concluding that defendants' retrial was barred by double jeopardy.

*Id.*, at *2-3.

This decision did not constitute an unreasonable application of the clearly established Supreme Court standard. This is not a case where a trial was going poorly for the prosecution so it sought to scuttle it through deliberate misconduct resulting in a mistrial motion. Rather, the incident occurred at the very start of the case during opening statements. When Petitioner's counsel moved for the mistrial, the prosecutor opposed the motion and expressed a desire to proceed. Dkt. 9-11, at 22. There is simply no basis in the record for concluding that the prosecutor engaged in

conduct intended to provoke Petitioner into moving for a mistrial. The prosecutor stated in opening that it would attempt to rehabilitate Bowler's credibility with testimony that he was forced at gunpoint to recant his statement to police that Petitioner was one of the shooters at co-defendant's attorney's office. The fact the location of the statement put co-defendant's counsel in a precarious position arose from the circumstances of the incident and was not a factor that fell within the prosecutor's control. Because the state court reasonably adjudicated this claim, Petitioner has failed to demonstrate entitlement to relief.

## B. Prosecutorial Misconduct

Petitioner claims that the prosecutor committed misconduct during closing argument by asserting facts not in evidence. Petitioner's related claim that his trial counsel was ineffective for failing to object to the comments will be discussed below with Petitioner's other claims of ineffective assistance of counsel.

The clearly established federal law relevant to the Court's review of a prosecutorial misconduct claim is *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, 567 U.S. 37, 44 (2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they so infected the trial with unfairness as to

make the resulting conviction a denial of due process." 477 U.S. at 181 (internal quotation marks omitted). The Court must ask whether the Michigan Court of Appeal's decision denying petitioner's prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 132 S. Ct. at 2155 (quoting *Harrington*, 562 U.S. at 103).

Petitioner complains that the prosecutor improperly told the jury during summation that Petitioner and his accomplices "came to that location, they came to the location with guns, they came to the location with guns that were loaded. They surrounded the vehicle. And without much discussion, they shot into the van. So they had to have planned this before they got there. This was not something that was done on the spur of the moment. They were lying in wait." Dkt. 9-21, at 96. He also complains about the prosecutor's comment that Cooper ". . . testifies that she didn't want anything to do with the case because they wanted to take care of it on the streets." Id., at 153. Petitioner argues that neither of these statements were supported by the evidence presented at trial.

Prosecutors must refrain from interjecting their personal beliefs into the presentation of their cases. *United States v. Young*, 470 U.S. 1, 8-9

(1985). "Misrepresenting facts in evidence can amount to substantial error," *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000). Prosecutors may, however, argue all reasonable inferences from the evidence presented at trial. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).

Petitioner's claim is without merit, because contrary to his assertion, the complained-of statements by the prosecutor were supported by reasonable inferences based on the evidence presented at trial. The evidence at trial indicated that when Parham returned home and exited his vehicle, the defendants got out of a van and immediately started shooting in tandem. A reasonable inference can be made based on this evidence that the assailants had planned in advance to wait for Parham to arrive at his home so they could murder him. The argument was supported by the evidence of the circumstances of the shooting, and the rejection of the claim by the Michigan Court of Appeals was reasonable.

With respect to the prosecutor's comment on rebuttal, it is true that Cooper never made a statement that the defendants committed the crimes in retaliation for Parham shooting at her vehicle, or that they were going to handle the matter "on the streets" instead of relying on the police. Nevertheless, Cooper did admit during her testimony that she was reluctant to cooperate with the authorities in both prosecutions. Furthermore, the

circumstances of the shooting suggest that this was a case of "street justice" in that it occurred a few days after Parham had plead guilty but before his sentencing hearing.  One fair reading of the complained-of passage is that the prosecutor was first referring to Cooper's testimony that she did not want to be involved in the cases, and second, that though Cooper did not say so directly, the circumstances of the case suggested that the motive for the shooting was retaliation for the prior incident. Even if the inference was a bit of a stretch, it was not so flagrant or prejudicial so as to render Petitioner's entire trial fundamentally unfair. It was not unreasonable for the Michigan Court of Appeals to reject this claim on the merits.

## C. Ineffective Assistance of Counsel

Petitioner raises four claims of ineffective assistance of counsel. Petitioner first asserts that defense counsel was ineffective for impeaching Bowler's testimony with the tape recorded statement he gave at co-defendant May's attorney's office. Next, Petitioner complains that his trial counsel failed to cross examine Cooper regarding the fact that she had not discussed Parham's sentence with him or his co-defendant. Petitioner also asserts that his counsel was ineffective for failing to object to the alleged misconduct of the prosecutor discussed above. Finally, Petitioner asserts

that his counsel failed to adequate prepare for the retrial in a number of ways.

To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness"; and (2) the deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

With respect to the first claim, the problem for Petitioner is that it is reasonably debatable whether playing the actual recording of Bowler's statement at May's attorney's office for the jury would have been beneficial or harmful to the defense. Defense counsel, in fact, presented evidence that the recanting statement was made, and he elicited testimony from

May's attorney that he did not think the statement seemed coerced. Playing the tape itself, however, carried with it the risk of having the jury make a determination that Bowler sounded as if he were being forced into making the statement. The decision not to take that risk is exactly the type of tactical decision that may not be second-guessed on habeas review. As the Supreme Court explained, there are "'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.'" Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Richter*, 562 U.S. at 106 (quoting *Strickland*, 466 U.S. at 689). The claim was reasonably rejected by the state court.

Petitioner next claims that his counsel should have elicited testimony from Cooper that she did not discuss Parham's sentence with Petitioner or May. Petitioner asserts that such testimony would have undermined the prosecutor's theory of motive as to why Petitioner shoot Parham. As the Michigan Court of Appeals reasonably found, this argument is based both on an oversimplification of the prosecutor's theory of the case and it also ignores the fact that Cooper testified on direct examination that she had not talked with Petitioner at all about Parham's case:

Defendant White's argument is based on the erroneous premise that his knowledge about the sentence that Parham received in Cooper's assault case was the sole motivation for the shooting. But the prosecution's cross-examination of Cooper established that there were problems between defendant White and victim Parham that preceded Cooper's assault. Furthermore, Cooper had already testified on direct examination that she did not speak with defendant White in 2012, had never told him about the proceedings involving Parham, and had not talked to him about that case. That testimony, if believed, would have allowed the jury to find that defendant White had not been informed about Parham's plea and sentence in the assault case. Therefore, defense counsel's failure to further pursue that subject matter on cross-examination was neither objectively unreasonable nor prejudicial.

*White*, 2015 WL 6161448, at *6.

Cooper testified on direct examination that Parham shot her van in 2011, and that she dated Petitioner from 2010. Dkt. 9-17, at 97-98. She was still dating Petitioner at the time Parham shot her van, but Petitioner was not in the vehicle at the time. Id., at 99. Cooper testified that though she reported the shooting to police, she did not want anything to do with the case afterwards, and she had to be  arrested to come to court to testify. Id., at 99-102. She flatly denied that she told Petitioner about what happened with the case against Parham. Id., at 102-03. Indeed, she denied that she spoke with Parham at all and was not longer his girlfriend at the time. Id., at 103–09. She admitted only speaking with Petitioner again after

his arrest while he was in jail. Id. In light of Cooper's vehement denial of informing Petitioner about Parham's prosecution and sentence on direct examination, it was not deficient performance for Petitioner's counsel not to revisit this portion of her testimony that had already been favorable to her client. The rejection of this claim by the Michigan Court of Appeals was not unreasonable.

Petitioner next asserts that his counsel was ineffective for failing to object to the alleged misconduct of the prosecutor discussed above. To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle v. Bagley*, 457 F.3d 501, 528 (6th Cir. 2006).

Finally, Petitioner asserts that his counsel was ineffective in a number of ways in his preparation for the second trial. The Michigan Court of Appeals rejected the claim on merit as follows:

Defendant White also argues that defense counsel was ineffective for not investigating or calling an expert witness to testify regarding problems with the reliability of eyewitness testimony. Again, defendant White has not submitted an affidavit or other offer of proof from a proposed expert witness to demonstrate how such testimony could have been helpful or made a difference in the case. Moreover, the witnesses in this case were already familiar with defendant White. Significantly, Bowler testified that he knew both defendants because they grew up in the same neighborhood; thus, there is no reasonable probability that the testimony of an expert could have affected the outcome.

Defendant White also asserts that trial counsel (1) failed to consult with him about an alibi defense, (2) failed to provide him with discovery, (3) failed to meet with him after the first trial ended in a mistrial in time to prepare for the second trial, and (4) failed to return numerous telephone calls from him and his family members to discuss trial strategy. Again, the extent of counsel's pretrial preparations and contacts are not a matter of record, defendant White has not supported his claims with any affidavits or other offers of proof, and he does not explain how these alleged deficiencies affected the outcome of trial. Accordingly, these claims fail.

*White*, 2015 WL 6161448, at *6.

This summary denial of Petitioner's remaining conclusory allegations of ineffective assistance of counsel was not unreasonable. "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013)(quoting Strickland, 466 U.S. at 689). At root, these remaining

allegations of ineffective assistance of counsel claim are based on mere speculation that further investigation and preparation for the retrial would have been beneficial. *Hodge v. Haeberlin*, 579 F.3d 627, 650 (6th Cir. 2009). It was reasonable for the state appellate court to reject these claims.

As none of Petitioner's claims merit relief, the petition will be denied.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims are completely devoid of merit. Therefore, the Court denies a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

Dated: May 2, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 2, 2017, by electronic and/or ordinary mail and also on
Brian White #450311, Chippewa Correctional Facility,
4269 W. M-80, Kincheloe, MI 49784.


s/Barbara Radke
Deputy Clerk